## In re HERRMAN.

(Circuit Court of Appeals, Second Circuit. November 21, 1904.)

No. 43.

BANKRUPTCY—CONCEALMENT OF ASSETS—FALSE OATH—DISCHARGE—EVIDENCE.

A bankrupt's wife acquired $10,000 from her father, which constituted her sole estate. In bankruptcy proceedings of a firm of which her husband was a member an indebtedness for $6,000 loaned by the wife to the firm was scheduled. Nothing was paid to the creditors of the firm, but almost immediately thereafter the husband again commenced business in the name of his brother, and testified that his wife contributed $10,000 of this business and the brother $2,000. This business was extraordinarily successful, the profits being invested in real estate, etc.; the bankrupt testifying that he managed the business for his wife without charge, drew such funds from the business as he wanted, and, though for the last 30 years he lived in a large and expensive house, he paid nothing to his creditors. He was never discharged under the former bankruptcy proceedings, and thereafter individually filed another petition, in which he scheduled no assets, and old debts amounting to nearly $9,000. *Held*, that such facts were sufficient to show that the bankrupt owned a substantial interest in the partnership, and that he was guilty of a false oath, precluding a discharge, by swearing to a schedule stating that he had no such property.

Appeal from the District Court of the United States for the Southern District of New York.

The following is the opinion of the court below:

HOLT, District Judge. This is a motion to confirm a referee's report recommending the discharge of the bankrupt. Two of the objections filed to the discharge are, in substance, that the bankrupt omitted from his schedules of assets an interest in various pieces of real estate and in the stock of the Morris S. Herrman Company. The bankrupt claims that his wife owns this property, and the question is whether he owns it or she. In June, 1869, the bankrupt was married. His wife's father gave to Mrs. Herrman on the day of the wedding $10,000. The bankrupt at that time was a member of the firm of A. B. Herrman & Co., composed of his brother, Adolph B. Herrman, and himself. In February, 1870, the firm of A. B. Herrman & Co. failed, and were adjudicated bankrupts in this court. Their schedules showed debts amounting to about $130,000. Most of these were for merchandise purchased immediately before the failure. Deborah Herrman, the bankrupt's wife, was inserted in the schedules as a creditor for $6,000 for money loaned to the debtors during the year 1869. The assets scheduled amounted nominally to about $15,000, of which a stock in trade at Philadelphia was put in at $8,000, and the remainder was substantially uncollected notes and accounts. The evidence shows that no dividend was declared in the bankrupt's proceedings, and nothing was ever paid to the creditors. A petition for discharge was filed, but it appears never to have been acted on. In 1870, some few months after the adjudication in bankruptcy, a business was begun in New York City under the name of Morris S. Herrman. Morris S. Herrman was a younger brother of the bankrupt, being at that time about 21 years old. The bankrupt claims that Morris S. Herrman and Deborah Herrman, the bankrupt's wife, were partners in the business carried on under the style of Morris S. Herrman, and that he, the bankrupt, Herman Herrman, had no interest in the business. He testifies that Mrs. Herrman put into the business $10,000, and that Morris S. Herrman put originally into the business about $2,000 and subsequently other money, making his contribution about equal to Mrs. Herrman's, and that Morris S. Herrman and Mrs. Herrman thereupon continued to be equal partners. Mrs. Herrman had little knowledge of

business and took little part in the business. Herman Herrman, her husband, was the active manager of the business. He asserts that he never was paid any salary, but drew from the business at all times whatever money he saw fit to take. This business was conducted in this manner until about 1892, when a stock company was formed to continue the business, under the style of the Morris S. Herrman Company; the stock being equally divided between Morris S. Herrman and Mrs. Deborah Herrman. The business of the firm and of the company appears to have been extraordinarily successful. From the profits of the business investments were made in real estate, the title being taken in the name of Morris S. Herrman, but it being asserted by all the Herrmans that Morris S. Herrman held the title for himself and Deborah Herrman, each owning an undivided half interest. The real estate so purchased was speculated with and added to until the present value of the real estate so held in common is admitted to amount to about $1,000,000. In 1899 Herman Herrman filed another petition in bankruptcy and was adjudicated a bankrupt in this court. His schedules showed no assets. Three debts are scheduled, amounting in the aggregate to $8,943, two of which, amounting to over $8,500, are judgments which have been renewed, and which were originally based on debts existing in 1869. The practical object of this bankruptcy is to obtain a discharge from these debts, all of which the bankrupt could have easily paid at any time during the last 30 years. The referee found that the undivided half of the real estate standing in the name of Morris S. Herrman and half of the stock of the Morris S. Herrman Company belonged in fact to Mrs. Deborah Herrman, and not to the bankrupt, and recommended that the bankrupt be discharged.

It is undoubtedly true that a debtor is not bound to work for his creditors. He can work for his wife, and render her services, however valuable, for nothing, if he sees fit to do so. But, if he has property, that must be applied to the payment of his debts, before it can be given to his wife or to any one. The question in this case is whether the bankrupt contributed any capital to the business carried on under the name of Morris S. Herrman. If he did, he has an interest in the business, and the real estate bought with the profits of the business. The evidence shows that Mrs. Herrman's father gave her on the day of her marriage $10,000. The bankrupt claims that the $10,000 was contributed as capital by Mrs. Deborah Herrman to the business carried on under the name of Morris S. Herrman, and that he (the bankrupt) did not contribute any part of said $10,000. The evidence of Mrs. Herrman and of her husband is explicit that she never received any other property from her father or from any other source during the first 10 years of her married life, except the $10,000 given her by her father the day she was married. The schedules in bankruptcy of the old firm of A. B. Herrman & Co., which are signed and sworn to by the bankrupt in this case, state that that firm was indebted to Deborah Herrman for $6,000 for money loaned in the year 1869. If that money was loaned by Mrs. Deborah Herrman to the old firm, it was loaned out of the $10,000 given to her by her father, for she had no other money at that time, leaving but $4,000 in the possession of Mrs. Herrman. The only way in which that $6,000 could get back to Mrs. Herrman, to be contributed by her to the new firm carried on under the style of Morris S. Herrman, would be for the old firm of A. B. Herrman & Co. to pay her that amount after they went into bankruptcy. If they paid her that amount, and that amount was then put into a new business in which she was alleged to be a partner, the transaction was in substance nothing but a concealment by the bankrupt Herman Herrman of money which belonged to his creditors in bankruptcy with which to start in business for himself again. It is probable that all of the substantial capital of the new business carried on under the style of Morris S. Herrman was contributed by the bankrupt Herman Herrman from assets which belonged to the creditors of his old firm, but which he fraudulently concealed and appropriated to his own use; but at all events the evidence in this case shows that to the extent of $6,000 at least that was the case. The facts that the bankrupt had the new business carried on in the name of his brother, and had the title to the real estate taken in the name of his brother, there being nothing to indicate

that even his wife had any interest in the business or in the real estate, are extremely suspicious. The entire transaction has every mark of fraud. The only witnesses called, or who apparently could have been called, in the case, are the bankrupt and his wife and his brother, Morris S. Herrman. The wife's evidence shows that she substantially knows nothing about the business, and leaves it all to her husband. The testimony both of the bankrupt and his brother is extremely unsatisfactory. Its general tone is improbable, contradictory, and untrustworthy. The bankrupt admits, in substance, that during the last 30 years he and his family have lived in a large and expensive house, on a liberal scale, and that he has had whatever money he wanted from the business; but his claim all these years has been that, as everything belongs to his wife, he is not bound to pay his creditors anything. I think his claim that his wife contributed all the capital to the business, and that therefore she is the sole owner of the half interest in the real estate and of the stock of the Morris S. Herrman Company standing in her name, is invalid; that the bankrupt has always owned and now owns a substantial interest in the business and in the real estate bought with the profits of it; and that he made a false oath by swearing to schedules stating that he had no such property.

My conclusion is that the referee's report should not be confirmed, and that the discharge of the bankrupt should be refused.

Claud V. Pallister, for appellant.

F. Werner, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. Decree refusing discharge is affirmed, on opinion of District Judge.

---

THE NEW HAMPSHIRE.

(Circuit Court of Appeals, Second Circuit. March 8, 1905.)

No. 112.

1. COLLISION—STEAMBOAT AND TUG WITH TOW CROSSING—STARBOARD-HAND RULE.

Evidence *held* to sustain the finding of the trial court that at the time of a collision between a steamboat passing down East river and a car float in tow alongside of a tug crossing to Brooklyn there was not such fog as to render the starboard-hand rule inapplicable, and that the collision was due to the fault of the steamboat in failing to observe such rule and keep out of the way by stopping and reversing until the tug and tow had passed in accordance with the latter's signal.

2. SAME—NAVIGATION OF EAST RIVER—POSITION OF VESSEL IN CHANNEL.

A tug with two long car floats in tow alongside was not in fault for being on the east side of the channel in East river in passing up to make a landing on the Brooklyn side, where such position was necessary and customary to enable her to round to and land safely in the then state of the tide.

Appeal from the District Court of the United States for the Southern District of New York.

The libel was filed by Frank J. McBride, master of the steam tug Lowell M. Palmer, on behalf of himself and all others interested in said tug and car float No. 8 and the cars laden thereon and the contents of the same, which said float was being towed by the tug, against the steamboat New Hampshire